UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:11cr1 (JBA) |
| v. | |
| RICHARD DANIELS | June 4, 2019 |

**RULING ON DEFENDANT'S PETITION FOR RELIEF PURSUANT TO FIRST STEP ACT**

Defendant Richard Daniels petitions for modification of his sentence under the First Step Act, (Def.'s Pet. [Doc. # 871]), which the Government opposes, (Govt. Resp. [Doc. # 872]). For the reasons that follow, Defendant's petition is denied without prejudice.

## I. Background

On August 29, 2012, Defendant Richard Daniels was convicted by jury of Counts One and Two of the Third Superseding Indictment, which charged him with conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846, and conspiracy to maintain a drug-involved premises within 1000 feet of a school and a housing facility, in violation of 21 U.S.C. §§ 846 and 860. (Jury Verdict [Doc. # 544]; Third Superseding Indictment [Doc. # 349].)

Defendant was initially sentenced to be imprisoned for 228 months on both counts, running concurrently, and to 120 months of supervised release on both counts, running concurrently. (Judgment [Doc. # 727].) Mr. Daniels moved to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel by his trial attorney. (Mot. to Vacate Sentence, *Daniels v. United States of America*, No. 3:15cv1551(JBA) (D. Conn. Oct. 26, 2015).) Mr. Daniels and the Government reached an agreement to resolve that proceeding which recognized

that the "judgment and sentence in this case is open to collateral attack" because there was "an insufficient record to establish that the ramifications of rejecting a plea agreement and proceeding to trial were fully explained to and/or understood by Daniels." (Stip. for Re-Sentencing [Doc. # 844] at 2.) The parties agreed that the Court should vacate the judgment in this case and re-sentence Mr. Daniels, that at re-sentencing the applicable guidelines range should be 120 to 135 months' imprisonment, and that Mr. Daniels would be subject to a statutory mandatory minimum sentence of ten years' imprisonment. (*Id.* at 4-5.) On June 24, 2016, Mr. Daniels was re-sentenced to 120 months' imprisonment on both counts, running concurrently, and to 60 months of supervised release on Count One and 120 months of supervised release on Count Two, running concurrently. (Amended Judgment [Doc. # 847-1].)

The First Step Act of 2018 amends 18 U.S.C. § 3624(b) to alter the method by which the Bureau of Prisons (BOP) must calculate a prisoner's "good conduct time credits." (Govt. Resp. at 1.) Prior to the First Step Act, calculation of good time credit by the BOP was based on the sentence an inmate actually serves, making 47 days per year the maximum amount of good time credit a prisoner could earn. (*Id.* at 1-2; Def. Pet. at 2-3.) Pursuant to the First Step Act, good time credit will be calculated based on the sentence imposed, not on the sentence an inmate actually serves, making 54 days per year the maximum amount of good time credit a prisoner could earn. FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. (*See also* Govt. Resp. at 1-2; Def. Pet. at 2-3.)

Mr. Daniels argues that this amendment by the First Step Act to the method of calculating good time became effective immediately upon signature by the President and therefore requires

2

recalculation of his good time credit earned. (Def. Pet. at 2.) The Government argues that this portion of the First Step Act is not yet in effect and therefore does not impact the current calculation of Mr. Daniels' good time credit. (Govt. Resp. at 1-2.)

Based on the method of calculation of good time credit in place prior to the First Step Act, Mr. Daniels' projected release date is currently September 21, 2019. (Def.'s Pet. at 1; Federal Bureau of Prisons, *Find an inmate.*, https://www.bop.gov/inmateloc/.) Mr. Daniels believes that if the new method of calculation of good time credit is used, his projected release date is July 12, 2019 and his "Home Confinement Date" is February 2019. (*Id.*)

**II. Discussion**

Section 101(a) of the First Step Act amends 18 U.S.C. § 229 to direct the Attorney General to review and develop prisoner risk and needs assessment systems and programs. FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194. It then directs the Attorney General to "develop and release publicly on the Department of Justice website a risk and needs assessment system" "[n]ot later than 210 days after the enactment of this subchapter." *Id.*

Section 102(b)(1)(A) amends 18 U.S.C. § 3624 in the following way:

> in subsection (b)(1)—
>     (i) by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court,"; and
>     (ii) by striking "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence" and inserting "credit for the last year of a term of imprisonment shall be credited on the first day of the last year of the term of imprisonment"; and . . .

*Id.* (the "good time provision"). Section 102(b)(1)(B) further amends § 3624 to provide additional detail about "prerelease custody or supervised release for risk and needs assessment system participants."

Section 102(b)(2) then provides: "The amendments made by this sub-section shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." *Id.* (the "effective date provision"). The First Step Act became effective on December 21, 2018; 210 days from that date is July 29, 2019. (*See* Govt. Resp. at 1 n.1.)

Defendant argues that the good time provision became effective immediately on December 21, 2018. The Government argues that according to the plain text of the First Step Act, the good time provision is not in effect until July 29, 2019. (Govt. Resp. at 2.)

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). Defendant argues that Section 102(b)(2)'s effective date provision is not a "clear direction" as to the effective date of the good time provision because the "full statutory context" of Section 102 and "potential constitutional infirmities" require application of Section 102(b)(2)'s effective date only to Section 102(b)(1)(B)'s provisions regarding the risk and needs system and not to Section 102(b)(1)(A)'s good time provision. (Def.'s Pet. at 5.)

First, as to the "full statutory context," Defendant argues that "only" Section 102(b)(1)(B) "has any relation to the risk and needs assessment system," while the good time provision "merely adjusts a calculation that the BOP has been making for decades" and "requires no new system to implement and, thus, requires no delay." (*Id.* at 6.) He contends that because only Section 102(b)(1)(B) is related to the risk and needs assessment system, it makes sense for the effective date

4

of only that section—and not of the good time provision—to be tied to the implementation of that system. (*Id.*) Because the BOP could easily and quickly implement the good time provision without any reference to the risk and needs assessment system, Defendant argues, it makes no sense to delay implementation of the good time provision. (*Id.* at 7.) Mr. Daniels argues that to construe Section 102(b)(2)'s effective date as applicable to the good time provision would therefore lead to "absurd results," which the Court must avoid. (*Id.* at 6 (quoting *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012))).

Defendant also argues that based on the legislative histories of 18 U.S.C. § 3624 and the First Step Act, the good time provision is intended to remedy the BOP's current method of calculating good time credit at 47 days per year which is not consistent with the drafters' intent. Because "courts construe legislation aimed at remedying prior drafting oversights to be immediately effective," Mr. Daniels argues, the Court must find that the good time provision became effective immediately on December 21, 2018. (*Id.* at 7-8.) In support of this position, Defendant cites *Gozlon-Peretz*, where in "consider[ing] the effective date of a statutory amendment to correct an apparent mistake in the Controlled Substances Penalties Amendments Act of 1984, . . . the Supreme Court held, 'Given the apparent purpose of the legislation to rectify an earlier mistake, it seems unlikely that Congress intended the effective date to be any time other than the date of enactment.'" (*Id.* (quoting *Gozlon-Peretz*, 498 U.S. at 404-05).)

Given the unambiguous text of Section 102(b)(2), however, Defendant's arguments are unavailing. Mr. Daniels argues that it is illogical to link the implementation of the good time provision to the risk and needs assessment system, despite his acknowledgement that the language of the effective date "provision considered on its own could rationally be read to encompass the good-time fix." (*Id.* at 5.) Where Congress has crafted statutory language which on its face is

5

unambiguous, the Court must give effect to that language. Here, the statutory text plainly applies the effective date set out in Section 102(b)(2) to "this subsection," and thus the Court declines to read the statute as applying that effective date to only portions of that subsection even if doing so might be more logical, as Defendant urges.

Moreover, contrary to Defendant's argument that the statutory context "militate[s] in favor of construing" the effective date provision as applying only to Section 102(b)(1)(B), Section 102(b)(3) provides helpful statutory context which suggests that the effective date provision of Section 102(b)(2) applies equally to both 102(b)(1)(A) and 102(b)(1)(B). Section 102(b)(3) provides: "APPLICABILITY.—The amendments made by this sub-section shall apply with respect to offenses committed before, on, or after the date of enactment of this Act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987." In other words, Section 102(b)(3) makes both the good time provision of 102(b)(1)(A) and the risk and needs assessment system provisions of 102(b)(1)(B) apply retroactively.

Defendant agrees that 102(b)(3) applies to the good time provision, (Def.'s Pet. at 1 (discussing the good time provision and noting that "[t]his amendment applies retroactively")), and if the retroactivity provision did not apply to the good time provision, Defendant would have no grounds on which to argue that his good time credits should be recalculated under the First Step Act. But Mr. Daniels argues nonetheless that only 102(b)(3) (the retroactivity provision), not 102(b)(2) (the effective date provision), should be applied to the good time provision because 102(b)(2) contains a reference to the "risk and needs assessment system" but 102(b)(3) does not. This argument ignores the clear word-choice parallels between 102(b)(2) and 102(b)(3) which indicate that their applications are intended to be parallel as well: 102(b)(2) explains when "[t]he amendments made by this sub-section shall take effect" and 102(b)(3) explains to which offenses

6

"[t]he amendments made by this sub-section shall apply." Defendant urges the Court to adopt a reading of the First Step Act which would interpret "this sub-section" in Section 102(b)(2) to refer to only Section 102(b)(1)(B) but would interpret "this sub-section" in Section 102(b)(3) to refer to both Section 102(b)(1)(A) and Section 102(b)(1)(B). The Court declines to endorse that inconsistent interpretation of the statutory text.

Second, as to the "constitutional infirmities" inherent in applying the effective date provision to the good time provision, Defendant argues that that interpretation of the First Step Act would be "arbitrary and capricious" and "cruel" and would violate the Due Process and Equal Protection Clauses. (Def.'s Pet. at 8-9.) He contends that "[d]elaying the effective date of the good-time fix to an uncertain time in the future . . . would require greater-than-intended incarceration for the class of well-behaved prisoners who, but for the delayed effective date, would be immediately released from incarceration." (*Id.* at 9.) Defendant concludes that this "[d]isparate treatment of similarly situated defendants triggers equal protection concerns when there is no rational basis for the distinction." (*Id.* (quoting *United States v. Juvenile Male*, 900 F.3d 1036, 1043 (9th Cir. 2018)).)

But "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993), and in the absence of any claim "that the statutory distinction . . . burdens a suspect group or a fundamental interest," a court should "not overturn [] a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the legislature's actions were irrational," *Vance v. Bradley*, 440 U.S. 93, 96-97 (1979). A "[p]art[y] challenging legislation under the Equal Protection Clause cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may

7

take judicial notice, that the question is at least debatable.'" *Western and Southern Life Ins. Co. v. State Bd. of Equalization of Calif.*, 451 U.S. 648, 674 (1981) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)).) "[T]hose attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it." *Beach Comms., Inc.*, 508 U.S. at 315 (internal quotation omitted).

The Government argues that "Congress rationally chose to give BOP a reasonable time to develop and implement, through notice-and-comment rulemaking, a new approach to awarding credit not only for good conduct, but also for successful completion of recidivism reduction programming under 18 U.S.C. § 3632(d)(4)." (Govt. Resp. at 2.) Mr. Daniels has not met his burden of negating "every conceivable basis" for Congress's decision to delay the effective date of the good time provision, and the Court cannot conclude that it is irrational for Congress to allow BOP time to prepare for the implementation of a new method of calculating good time credits. Defendant's constitutional challenge to the application of the effective date provision to the good time provision therefore fails.

The effective date provision of Section 102(b)(2) applies to the good time provision of Section 102(b)(1)(A). Therefore, "on the date that the Attorney General completes and releases the risk and needs assessment system under Subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of" the First Step Act, Mr. Daniels will be entitled to immediate recalculation of his good time credit using the method established by Section 102(b)(1)(A).

Section 101(a) of the First Step Act requires the Attorney General to "develop and release" that system "[n]ot later than 210 days after the enactment of this subchapter," which occurred on December 21, 2018. Thus the Court anticipates that Mr. Daniels will be entitled to recalculation of his good time credit on July 29, 2019 and to immediate release on that date unless the BOP's

8

recalculation of his good time credit, calculated in compliance with the new method set out in Section 102(b)(1)(A), demonstrates that Mr. Daniels is not yet eligible for release.

### III. Conclusion

For the foregoing reasons, Defendant's petition for relief under the First Step Act [Doc. # 871] is DENIED without prejudice to renew if the BOP does not timely recalculate Mr. Daniels' good time credit in accordance with Sections 102(b)(1)(A) and (b)(2) of the First Step Act.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of June 2019.